UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CLARK COUNTY BANCORPORATION,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION,<br><br>　　　　　Defendant. | CASE NO. C14-5816 BHS<br>　　　　　C14-5852 BHS<br><br>ORDER DENYING PLAINTIFF'S MOTIONS AND GRANTING DEFENDANT'S MOTION |

This matter comes before the Court on Defendant Federal Deposit Insurance Corporation-Receiver's ("Receiver") motion to dismiss or in the alternative, motion for summary judgment, Dkt. 172,[1] and Plaintiff Clark County Bancorporation's ("CCB") motion for summary judgment, Dkt. 175, motion for status conference, Dkt. 179, and motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, Dkt. 180. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies CCB's motions and grants the Receiver's motion for the reasons stated herein.

---

[1] Unless otherwise noted, references to the docket refer to documents in Cause No. 14-5816-BHS.

# I. PROCEDURAL AND FACTUAL BACKGROUND

**A. Receivership and Tax Refunds**

On August 1, 2001, CCB and the Bank of Clark County ("Bank") entered into a Tax Allocation Agreement ("TAA"). Dkt. 88 at 28–30. CCB was a registered bank holding company and parent of the Bank. *Id.* at 28. CCB and the Bank planned "to file consolidated federal and state income tax returns for the year 2001 and plan[ned] to continue to file consolidated income tax returns for all future years." *Id.* The entities agreed that the tax settlements between CCB and the Bank would be "conducted in a manner that is no less favorable to [the Bank] than if it were a separate taxpayer." *Id.* The TAA requires the Bank to compute its federal and state income taxes on a separate entity basis and then pay that full amount to the CCB, regardless of the amount owed by the consolidated entity. *Id*. at 28–29. Regarding the Bank's tax refunds, the TAA provides as follows:

> In the event [the Bank] incurs a loss for tax purposes, as computed in paragraph 1, [the Bank] shall record a current income tax benefit and receive a refund from [CCB] in an amount no less than the amount [the Bank] would have been entitled to receive as a separate entity as computed in paragraph 1. [CCB] shall pay such refund to [the Bank] not later than 30 days after the date [the Bank] would have filed its own return, regardless of whether the consolidated group is receiving a refund.

*Id.* at 29, ¶ 4.

On January 16, 2009, the Washington State Department of Financial Institutions closed the Bank and named the FDIC as receiver. Dkt. 173 at 60. CCB knew of the appointment of the Receiver on that date. Dkt. 174 at 7. On March 15, 2009, the Receiver submitted a request to the Internal Revenue Service ("IRS") to extend the

Bank's 2008 tax return filing to September 15, 2009. Dkt. 173 at 95. On September 11, 2009, the Receiver filed a 2008 loss year tax return for the consolidated group based exclusively on the Bank's financial information and claiming a refund of $729,231 for payments applied to estimated 2008 tax liability. Dkt. 173 at 5, ¶ 13. On October 5, 2009, the Receiver filed amended tax returns for the consolidated group's 2006 and 2007 tax years and claiming refunds for overpayments of $2,529,379 and $2,410,299, respectively, based on the carryback of the 2008 loss under the then applicable two-year carryback rule. *Id.* ¶ 14. By letter dated October 2, 2009, the Receiver sent Michael Worthy, the Chief Executive Officer of CCB, copies of the 2007 and 2006 refund forms. *Id.* at 97.

On November 2, 2009, the IRS issued refunds checks totaling $4.9 million to the Receiver as fiduciary for the Bank and as agent for the consolidated group. *Id.* at 6, ¶ 18; Dkt. 174 at 21, ¶ 9. One check was made out to "Clark County Bancorporation c/o FDIC as Receiver" and the other was made out to "Clark County Bancorporation." Dkt. 174 at 21, ¶ 9.

On April 29, 2010, CCB filed a 2008 loss year tax return and forms attempting to amend its 2003–07 tax returns to request refunds based on net operating loss carrybacks. Dkt. 173 at 7–8, ¶ 30. The IRS, however, only processed and accepted the Receiver's tax forms instead of CCB's forms. Dkt. 174 at 23, ¶ 15.

On October 7, 2010, the Receiver unsuccessfully attempted to contact representatives of CCB to obtain CCB's consent for the Receiver to accept the checks on behalf of CCB. Dkt. 173 at 6, ¶ 18. When CCB failed to respond, the Receiver contacted

the IRS requesting that the existing checks be cancelled and new checks be issued. *Id.* On April 12, 2011, the IRS obliged and issued new checks made out to "Bank of Clark County c/o FDIC as Receiver." Dkt. 174 at 21, ¶ 10.

On August 15, 2011, the Receiver requested authorization to act on behalf of the consolidated group. Dkt. 173 at 6, ¶ 20. On August 16, 2011, the IRS granted the request. *Id.* ¶ 21. On November 28, 2011, the IRS issued additional refund checks for the 2003–07 tax years. *Id.* at 7, ¶ 23. On January 12, 2012, the Receiver sent the IRS a letter stating that it was returning the checks because they were not payable to the Receiver. *Id.* ¶ 24. On February 6, 2012, the IRS reissued the checks payable to the Receiver. Dkt. 174 at 24, ¶ 21.

**B.     Litigation History**

On May 2, 2013, CCB filed a complaint against the Department of the Treasury, the IRS, and the FDIC in the District Court for the District of Columbia. *Clark Cty. Bancorporation v. United States Dep't of Treasury*, Cause No. CV-13-0632-JEB, Dkt. 1, (D.D.C.). CCB sought a declaratory judgment requiring the IRS to issue new refunds to CCB. *Id.* On August 8, 2013, CCB filed an amended complaint adding the Receiver as a party. *Id.*, Dkt. 5.

On December 6, 2013, CCB sent the Receiver a letter demanding delivery of the tax refunds as well as all information related to the refund checks. Dkt. 88 at 26. On January 16, 2014, the Receiver responded and stated that CCB may have a claim against the failed Bank. Dkt. 173 at 112–16. The letter advised CCB to submit a proof of claim no later than April 16, 2014 even though the Receiver considered the claims bar date to

be April 23, 2009 ("Claims Bar Date"). *Id.* at 112. CCB did not submit a claim. *Id.* at 8, ¶ 34.

On January 30, 2014, CCB filed an amended complaint that "meander[ed] through various and sundry legal theories and claims for relief." *Clark Cty. Bancorporation v. United States Dep't of Treasury*, Cause No. CV-13-0632-JEB, 2014 WL 5140004, at *2 (D.D.C. Sept. 19, 2014). All Defendants moved to dismiss for various reasons. *Id.*

On July 29, 2014, CCB submitted a completed proof of claim form with the Receiver requesting the tax refunds. Dkt. 88 at 22–24.

On July 30, 2014, while the motions to dismiss were pending, CCB filed a new complaint against the FDIC and the Receiver in the D.C. district court. *Clark Cty. Bancorporation v. Federal Deposit Insurance Company*, Cause No. CV-14-1304-JEB, Dkt. 1 (D.D.C.). CCB sought declaratory relief requiring the delivery of the tax refunds. *Id.*

On August 20, 2014, the Receiver sent CCB a notice of disallowance of CCB's claim because it was filed after the established bar date of December 30, 2008. Dkt. 35 at 6–7.[2]

On September 19, 2014, the D.C. court granted the motions to dismiss in the first action, CV-13-0632-JEB. 2014 WL 5140004 at *5–16. As an introduction, the court provided as follows:

> This case, unfortunately, is not a tax-refund suit. Instead of pursuing this straightforward route against the Internal Revenue Service, the parent

---

[2] The Receiver admits that the stated bar date of December 20, 2008, was a scrivener's error. Dkt. 197 at 10 n.11.

> of a failed bank has presented an agglomeration of mismatched claims against a series of governmental agencies. Occasionally perceived amidst all of this legal fog is the relief actually requested: the return of a tax refund issued to the subsidiary bank's Receiver instead of to its parent company.
> 	***
> 	In lieu of a tax-refund action, Plaintiff has thrown into this suit every alternative approach it could conceive of: it brings constitutional challenges, administrative-law claims, and statutory causes of actions; it seeks damages, declaratory relief, injunctive relief, and a writ of mandamus; and it does so against the United States, the Department of the Treasury and its Acting Commissioner, the IRS and its Acting Commissioner, the FDIC in its corporate capacity together with its Acting Chairperson, and the FDIC in its capacity as Receiver together with its Acting Chairperson.

*Id.* at *1.

On October 14, 2014, shortly after its other complaint was dismissed, CCB filed a motion to transfer the second action, CV 14-1304-JEB, to this district. *See* Cause No. 14-5852-BHS, Dkt. 6. That same day CCB filed two complaints in this district. Cause No. 14-05811-BHS, Dkt. 1; Cause No. 14-05816-BHS, Dkt. 1. On October 27, 2018, the D.C. court granted the motion to transfer, which resulted in CCB having three actions pending in this district over the same tax refunds.

On June 16, 2015, the Court granted the United States of America, the Department of the Treasury, and the IRS's motion for summary judgment concluding in relevant part that, once a tax refund is issued, CCB may not pursue an action for an additional refund against any of these parties. Cause No. 14-5811-BHS, Dkt. 42. That same day, the Court denied the Receiver's motion to dismiss CCB's amended complaint concluding that CCB may be entitled to equitable extensions of the claim bar date. Cause No. 14-5816-BHS,

Dkt. 56. The Court relied on CCB's allegations that its claim arose after the claims bar date. *Id.* at 3–4.

On November 23, 2015, the Court granted in part and denied in part the Receiver's motion to dismiss CCB's complaint. Cause No. 14-5852-BHS, Dkt. 52. In relevant part, the Court denied the motion on CCB's claim for breach of the TAA. *Id.*

On February 10, 2016, CCB filed a fourth amended complaint asserting one claim for relief. Cause No. 14-5816-BHS, Dkt. 88. On February 16, 2016, the Court consolidated Cause No. 14-5816-BHS with Cause No. 14-5852-BHS. *See* Cause No. 14-5816-BHS, Dkt. 92.

On May 18, 2017, the Court denied CCB's motion for summary judgment as premature because the Receiver had failed to process CCB's administrative claim. Dkt. 116.

On August 27, 2018, the Receiver filed a motion to dismiss or, in the alternative, a motion for summary judgment, Dkt. 172, and CCB filed a motion for summary judgment, Dkt. 175.

On September 10, 2018, CCB filed a motion for status conference and motion pursuant to Rule 56(d). Dkts. 179, 180. On September 24, 2018, the Receiver responded to these motions. Dkts. 183, 184. On September 28, 2018, CCB replied. Dkt. 186.[3]

---

[3] The Court denies both motions. In the motion for a status conference, CCB sought guidance on whether it should respond to the Receiver's motion to dismiss for lack of jurisdiction. The Court denies CCB's motion for status conference as moot because CCB filed a full response to the Receiver's dispositive motion. In the motion for a stay pursuant to Rule 56(d), CCB requested that the Court stay consideration of the Receiver's motion pending the outcome of CCB's three motions to compel discovery. On September 19, 2018, the Court denied the motions to compel. Dkt. 182. Thus, the Court denies this motion as moot.

On October 5, 2018, the parties responded to the dispositive motions. Dkts. 187, 191. On November 8, 2018, the parties replied. Dkts. 197, 200.

## II.  DISCUSSION

The Receiver moves to dismiss CCB's complaints for lack of jurisdiction or, in the alternative, for summary judgment on all of CCB's claims in both complaints. Dkt. 172. CCB moves for summary judgment requesting an order that the tax refunds are property of the parent, CCB, pursuant to the TAA. Dkt. 175 at 1–2.

Although CCB's claims are unclear, it is clear that CCB is not making a claim pursuant to the Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). Dkt. 88 ("The tax refunds are not assets of a failed institution for which the FDIC serves as receiver, therefore FIRREA would not apply."). Instead, CCB seeks a "determination of ownership of refunds . . . pursuant to contract law in relation to the TAA." *Id.* Thus, the Court will address the contract interpretation issue.

Regarding FIRREA, CCB devotes a small portion of its opposition to this issue. Dkt. 200 at 8–10 ("Assuming Arguendo FIRREA Applies . . ."). CCB, however, fails to overcome binding precedent establishing that the Court lacks jurisdiction to consider CCB's late filed claims. *Intercontinental Travel Mktg., Inc. v. F.D.I.C.*, 45 F.3d 1278, 1284 (9th Cir. 1994) ("We read the claims bar date to be a jurisdictional requirement."). *See also Kuhlmann v. Sabal Fin. Grp. LP*, 26 F. Supp. 3d 1040, 1049 (W.D. Wash. 2014) ("The Ninth Circuit has repeatedly recognized the jurisdictional nature of FIRREA's mandatory exhaustion and filing requirements."). Therefore, to the extent CCB's claims

are based on claims against a failed institution under FIRREA, the Court concludes that CCB failed to timely file a claim and the Court lacks jurisdiction to consider the claim.

Regarding equitable doctrines that could toll the claims bar date, the Court finds that on balance CCB would not be entitled to extensions in equity. Although the Court is bound by the binding precedent that the bar date is a jurisdictional requirement, it seems completely inequitable that the Receiver is entitled to a bar date of April 2009 when Congress passed the law allowing entities to carry back losses for additional refunds in November 2009. However, based on the facts of this case, CCB failed to properly file claims with the Receiver or the IRS for the original refunds or the additional refunds. Now, CCB attempts to gain from the proper actions of the Receiver when the Receiver timely filed tax forms for both refunds. Moreover, since the Bank has been dissolved, CCB intends to use the funds to pay its attorneys and distribute the remainder as CCB's board determines, including payments to the board members themselves. Dkt. 191 at 18 n.16. In short, CCB's board intends to unfairly gain assets that it failed to properly secure itself. Nothing in this fact patterns seems equitable even if the Ninth Circuit were to alter the binding precedent. Therefore, the Court grants the Receiver's motion on this issue and will now consider the contract issue.

A.     **Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party

fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.      TAA**

"[T]he right to receive a tax refund constitutes an interest in property." *United States v. Sims*, 218 F.3d 948, 955 (9th Cir. 2000). "Unless some federal interest requires a different result," the federal choice of law rule for an issue regarding an interest in property is state law. *Butner v. United States*, 440 U.S. 48, 55 (1979).

CCB argues that ownership of the property at issue should be determined by the TAA. Under Washington law, contract interpretation is a question of law when the interpretation does not depend on the use of extrinsic evidence. *Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols–Kiewit Constr. Co.*, 176 Wn.2d 502, 517 (2013); *see also Mut. of Enumclaw v. USF Ins. Co.*, 164 Wn.2d 411, 424 n.9 (2008) (noting that when a contract presents no ambiguity and no extrinsic evidence is required to make sense of the contract terms, contract interpretation is a question of law).

In this case, the Court is able to interpret the TAA as a matter of law because CCB has failed to establish any ambiguity. Paragraph four of the TAA is entitled "Tax Refund from Parent." Dkt. 88 at 29. The first sentence of that paragraph explicitly provides that, "[i]n the event [the Bank] incurs a loss for tax purposes . . . [the Bank] shall record a current income tax benefit and receive a refund from [CCB] in an amount no less than the amount [the Bank] would have been entitled to receive as a separate entity." *Id.* CCB fails to establish any ambiguity in that sentence. Thus, when the Bank incurred substantial losses, it was entitled to a refund from CCB in an amount no less than the amount it would have been entitled to as a separate entity. Under the facts of this case,

even if CCB has properly filed the tax returns to obtain the contested refunds, it was contractually bound to refund the amount to the Bank. Therefore, the Court concludes that CCB's claim of entitlement to the refunds is without merit, grants the Receiver's motion for summary judgment, and denies CCB's motion for summary judgment.

The Court notes that CCB cites some authorities for the proposition that the TAA creates a debtor-creditor relationship. Dkt. 175 at 5–9. The Receiver, however, correctly argues that these authorities are distinguishable and, even if persuasive, the TAA controls the disposition of the refunds. First, CCB's authorities considered the scope of assets when a party files for bankruptcy protection. *In re IndyMac Bancorp, Inc.*, 2012 WL 1037481 (Bankr. C.D. Cal. Mar. 29, 2012); *In re IndyMac Bancorp, Inc.*, 2012 WL 1951474 (C.D. Cal. May 30, 2012) *aff'd, In re IndyMac Bancorp, Inc.*, 554 F. App'x 668 (9th Cir. 2014); *In re Imperial Capital Bancorp, Inc.*, 492 B.R. 25 (S.D. Cal. 2013); *In re Downey Financial Corp.*, 499 B.R. 439 (Bankr. D. Del. 2013) *aff'd*, 593 F. App'x 123 (3d Cir. 2015). Under bankruptcy law, the scope of an estate's property interests is broad. *See, e.g.*, *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204, (1983). Estate property includes all of a debtor's rights and expectancies and is a concept that "has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379 (1966).

In this case, the Court is not required to determine the scope of CCB's assets that will be subject to an orderly distribution under the bankruptcy laws. Instead, CCB asserts a breach of contract claim that requires to the Court to consider "(1) a contract that

imposed a duty, (2) breach of that duty, and (3) an economic loss as a result of the breach." *Myers v. State*, 152 Wn. App. 823, 827–28 (2009) (citing *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 712 (1995)). If CCB had a duty to pay the refund to the Bank under the terms of the TAA, then CCB fails to establish how the scope of assets in a bankruptcy action alters that duty. Thus, the Court rejects CCB's bankruptcy analogy.

Second, Ninth Circuit authorities hold that "'the parties are free to adjust among themselves the ultimate tax liability' . . . through 'an explicit agreement.'" *In re Indymac Bancorp, Inc.*, 554 Fed. Appx. at 669–70 (quoting *W. Dealer Mgmt. v. England*, 473 F.2d 262, 264 (9th Cir. 1973)). CCB and the Bank entered such an explicit agreement that included a provision governing the distribution of the refunds. CCB fails to cite any provision or evidence in support of the proposition that it reserved some discretion on whether to make the required refund payment to the Bank. Thus, it stands to reason that if CCB had properly filed the tax returns and received the contested refunds, it would have breached the contract by not paying the refund to the Bank. Regardless, CCB has failed to show that the Bank, or the Receiver on behalf of the Bank, breached the TAA by obtaining the refund itself. Thus, CCB's reliance on bankruptcy law is misplaced and easily distinguishable.

//

//

//

//

## III. ORDER

Therefore, it is hereby **ORDERED** that the Receiver's motion to dismiss or in the alternative, motion for summary judgment, Dkt. 172, is **GRANTED** and CCB's motion for summary judgment, Dkt. 175, motion for status conference, Dkt. 179, and motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, Dkt. 180, are **DENIED**.

The Clerk shall post this order in both cases, enter a **JUDGMENT** for the Receiver in both cases, and close both cases.

Dated this 10th day of January, 2019.

BENJAMIN H. SETTLE
United States District Judge